**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| TETTEY WAYO BOTCHWAY | : | |
| Petitioner | : | |
| v | : | Civil Action No. DKC-05-3321 |
| STEVEN R. WILLIAMS | : | |
| Respondent | : | |

o0o

**MEMORANDUM**

The above-captioned Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241 on December 12, 2005, alleges Petitioner's continued detention pending deportation to Togo is unlawful. Paper No. 1. Petitioner is confined to the Wicomico County Detention Center in the custody of United States Immigration and Customs Enforcement (ICE) pursuant to a final order of removal from this country. Pursuant to this court's Order to Show Cause, Respondent has filed an Answer seeking dismissal of the petition. Paper No. 3. Upon review of the papers filed, this court finds that a hearing in this matter is unnecessary. For the reasons that follow, the petition shall be denied.

**Background**

Petitioner, who claims to be a native of Togo, West Africa, tried to enter this country under the Visa Waiver Program[1] with a British passport issued in the name of Charles Tourka. Paper No. 3 at Ex. A, p. 2. Petitioner was refused admission, but then claimed he was fleeing persecution and requested consideration for asylum. *Id*. A notice of referral was filed with the Baltimore Immigration Court where Petitioner's applications for asylum, withholding of removal, and

---

[1] *See* 8 U.S.C. § 1187, permitting citizens of certain countries to enter the United States without visas.

protection under the Convention Against Torture[2] were heard by an immigration judge. In a decision dated September 16, 2004, the immigration judge denied the applications, finding that Petitioner had not established his true identity and citizenship. The immigration judge also based the denial on inconsistent claims regarding Petitioner's membership in a political party that opposes the Togolaise government and a lack of clear evidence that Petitioner had to flee Ghana, where he had lived for many years, in order to avoid persecution by Togolaise authorities. Paper No. 3 at Ex. A, p. 13–15.

Petitioner's appeal of the decision denying his application for asylum was dismissed by the Board of Immigration Appeals ("BIA") on February 10, 2005. *Id.* at Ex. B. Petitioner filed a motion to reopen the removal proceedings, claiming that conditions in Togo had worsened with the death of President Eyadema. *Id.* at p. 2. Finding that Petitioner had not alleged facts sufficient to establish that President Eyadema's death increased the possibility that Petitioner would be targeted upon his return to Togo and citing a lack of proof of Petitioner's identity, the motion to reopen was denied by the BIA on April 21, 2005. *Id.* Petitioner did not seek further review of the BIA decision.

Based on the uncertainty of Petitioner's citizenship, requests for travel documents were sent to the Embassies of Ghana and Togo two weeks after Petitioner was subject to an administratively final order of removal. *Id.* at Ex. C. It was determined that Petitioner was not a citizen of Ghana after he was interviewed by an official from that embassy. *Id.* at p. 2. Attempts to obtain travel documents from the Embassy of Togo began on August 3, 2005, when Petitioner's deportation officer learned that a travel document would be issued upon receipt of a $30.00 money order, four

---

[2] *See* 8 C.F.R. §§ 208.16–18, prohibiting return of a person to a country in which he or she would be tortured by or with approval of a public official.

photographs, a pre-paid Federal Express envelope, and copies of the decisions finding Petitioner removable. *Id*. Although the requested items were provided, a travel document was not issued and, on November 10, 2005, the Togolaise Embassy indicated that it would not issue a travel document. *Id*. Efforts to obtain travel documents were not, however, abandoned, and on February 9, 2006, Petitioner's travel document was issued by the Embassy of Togo. *Id*. at p. 3 and Ex. D. The only remaining task is to schedule Petitioner's departure, which is anticipated to occur within the next 60 days. *Id*. at Ex. C, p. 3.

## Standard of Review

Petitioner seeks review of his continued detention pending removal. The decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001) governs whether an alien's detention pending removal is constitutional. In *Zadvydas*, the Supreme Court held that post-removal order detention under 8 U.S.C. § 1231(a) is implicitly limited to a period reasonably necessary to bring about the alien's removal from the United States and does not permit indefinite detention. In sum, the Court found that after an order of deportation became final, an alien may be held for a six month period. After this period:

> [o]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 700. The purpose of detaining a deportable alien is to insure his presence

at the moment of removal. *See id*. at 697–99. In cases where it is unlikely that removal will occur, detention of the alien no longer serves this purpose. *See Clark v. Martinez*, __ U.S. __, __, 125 S. Ct. 716, 726 (2005) ( where repatriation negotiations for removal of inadmissible aliens to Cuba had ceased, removal was not reasonably foreseeable). Refusal to cooperate with officials cannot be the basis for finding that removal is not likely to occur in the foreseeable future. *See e.g. Pelich v. INS*, 329 F. 3d 1057, 1060 (9th Cir. 2003) (detainee can not argue that removal is unlikely when his decision to cooperate is the controlling factor).

In the instant case travel documents authorizing Petitioner's repatriation to Togo have been issued. Paper No. 3 at Ex. D. The likelihood of Petitioner's removal has been established by the evidence presented: however, in light of the fact that arrangements for Petitioner's travel to Togo have not been finalized, Respondent will be required to file a status report advising this court when those arrangements are completed. Petitioner's release from custody pending removal is not warranted at this time and the Petition for Writ of Habeas Corpus shall be denied without prejudice. A separate Order follows.

\_\_\_3/23/06_____  _____/s/_____
Date                                       DEBORAH K. CHASANOW
                                           United States District Judge